IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  Cr. No.  18-03143 JCH |
| | ) |
| VERNON POLEAHLA, | ) |
| | ) |
| Defendant. | ) |

UNITED STATES' SENTENCING MEMORANDUM

The United States submits this sentencing memorandum respectfully requesting that the Court sentence the defendant, Vernon Polehala, to a term of imprisonment of 74 months on Count 1, Voluntary Manslaughter, to run consecutive to a term of imprisonment of 46 months on Count 2, Assault Resulting in Serious Bodily Injury, for a total sentence of 120 months.  In support, the United States asserts the following:

BACKGROUND

On April 27, 2018, Zuni Police Department received an emergency call regarding a stabbing at that occurred at the home of 70-year-old John Doe 2.  (PSR ¶¶ 10, 12.)  When officers arrived at the home, they found John Doe 2 bent backwards over the couch, bleeding from his neck.  (PSR ¶ 10; Government's Exhibit 1.)  John Doe 2 told officers he had been stabbed by his nephew, the defendant, Vernon Poleahla.  (PSR ¶ 10.)  Officers also made contact with 60-year-old John Doe 1, who was standing outside.  John Doe 1 was bleeding from a stab wound in his stomach.  (*Id.*)

Officers transported both victims to the hospital. While John Doe 2 recovered from his injuries, John Doe 1 was pronounced dead on April 29, 2018. (*Id.*)

John Doe 2 provided the following account of the stabbing. According to John Doe 2, Defendant arrived at John Doe 2's house around 6:00 to 7:00 p.m. on the evening of the stabbing. (PSR ¶ 12.) Defendant was intoxicated and upset. He came inside the home and began berating a guest of John Doe 2. (*Id.*) When John Doe 2 told Defendant he did not like how Defendant was treating the guest, Defendant exited the home and started screaming outside. Defendant eventually left. (*Id.*)

After Defendant was gone, John Doe 2 started making dinner for himself and John Doe 1. (*Id.*) At approximately 9:00 p.m., John Doe 2 heard a loud knocking on the front door. It was Defendant, still upset. (*Id.*) John Doe 2 invited Defendant to dinner. During dinner, Defendant once again began criticizing and insulting John Doe 1 and John Doe 2. Defendant was cursing and yelling. (*Id.*) In an effort to calm Defendant down, John Doe 2 invited Defendant into the living room to talk. (*Id.*) John Doe 1 remained in the kitchen. (*Id.*)

In the living room, Defendant continued to argue with John Doe 2. Among other things, Defendant complained about not having a key to the home. (*Id.*)

In the middle of the verbal argument, Defendant suddenly launched himself off the couch and started choking John Doe 2 with two hands. (*Id.*) The next thing John Doe 2 knew he felt a wet and warm feeling on his neck, where Defendant had stabbed him. John Doe 2 called out for help. (*Id.*) John Doe 1 intervened and began fighting with the defendant. (*Id.*) During the fight, the defendant stabbed John Doe 1 in the stomach, causing his death. (PSR ¶ 13.) After the stabbing, Defendant fled the home. (PSR ¶ 12.) When he was located and arrested, Defendant still had blood on his hands and clothing. (PSR ¶ 11.)

On May 1, 2018, the United States filed a complaint charging Defendant with second degree murder, in violation of 18 U.S.C. §§ 1153 and 1111, and assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(6).  (Doc. 1.)  On September 26, 2018, Defendant pleaded guilty, pursuant to an information, to voluntary manslaughter, in violation of 18 U.S.C. §§ 1153 and 1112, and assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(6).

## PLEA AGREEMENT

Under the plea agreement, the defendant pleaded guilty to voluntary manslaughter, rather than second degree murder as previously charged in the complaint.  The government respectfully requests that the Court accept this agreement.  As the Supreme Court has recognized, "[t]he potential to conserve valuable prosecutorial resources and for defendants to admit their crimes and receive more favorable terms at sentencing means that a plea agreement can benefit both parties." *Missouri v. Frye*, 132 U.S. 1399, 1407 (2012).  Parties in a criminal case must assess the likely outcome of motions and trial practice.  Defendants in particular must weigh their tolerance for the risk of losing a trial against the benefits of a negotiated settlement.  Likewise, counsel for the United States must weigh the risks of proceeding to trial.

The United States carefully weighed the evidence in this case.  In negotiating the plea agreement, the United States considered the nature of the offense and Defendant's history.  Accordingly, the United States asks this Court to accept Defendant's plea agreement.

## THE SENTENCING GUIDELINES CALCULATION

On January 4, 2019, United States probation issued a Presentence Report ("PSR") calculating Defendant's guideline range as 70-87 months of imprisonment. (PSR ¶ 97.)  The government does not object to the guideline calculations contained in the PSR.

ARGUMENT

As this Court is well-aware, the United States Sentencing Guidelines are advisory. *See United States v. Booker*, 543 U.S. 220, 234 (2005). In determining a sentence, the district court must consider both the Guidelines and the factors set forth in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 51 (2007). Under this framework, an appropriate sentence is one that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence to criminal conduct, protects the public from further crimes of the defendant, and provides the defendant with needed educational or vocational training, medical care or other correctional treatment. 18 U.S.C. § 3553(a)(2)(A-D); *Booker*, 543 U.S. at 261-62.

In the district court, no presumption of reasonableness attaches to a Guideline sentence. *United States v. Rita*, 551 U.S. 338, 350 (2007). A court may vary after considering the sentencing factors. *Gall*, 552 U.S. at 49. The greater the degree of variance, the greater the justification needed. *Id.* For the reasons set forth below, an upward variance is appropriate in this case.

   1. **Voluntary Manslaughter**

The United States Sentencing Guidelines recommend a range of 63 months to 78 months of imprisonment for a defendant with a criminal history category of I who pleads guilty to the offense of voluntary manslaughter. *See* U.S.S.G. § 2A1.3. The government submits that a sentence towards the top of this range is an appropriate sentence for the killing of John Doe 1.

Defendant has admitted to stabbing John Doe 1 in the stomach, thereby causing his death. (Doc. 25 at 5.) In determining Defendant's sentence for this crime, the Court must consider the "nature and circumstances" of this offense. 18 U.S.C. § 3553(a)(1). One purpose of this inquiry is distinguishing among defendants who commit a particular offense or type of offense. *See*

*United States v. Cerno*, 529 F.3d 926, 939 (10th Cir. 2008) (Section 3553(a) directs courts to consider "whether the offense committed was more or less heinous than offenses committed by other defendants convicted under the same statute."). Generally, the more egregious the offense the more severe punishment the Court should impose. *See* 18 U.S.C. § 3553(a)(2)(A) (the sentence imposed should reflect the seriousness of the offense.).

Here, Defendant's conduct exceeds the heartland of voluntary manslaughter convictions. Unlike many cases, Defendant bears primary – if not sole – responsibility for the quarrel or provocation that preceded the stabbing of John Doe 1. In the middle of a run-of-the-mill family argument, Defendant suddenly attacked John Doe 2, first strangling and then stabbing him. (PSR ¶ 12.) When John Doe 1 courageously intervened in order to protect 70-year-old John Doe 2, Defendant stabbed him as well. (PSR ¶ 13.) Defendant's role as the initial aggressor sets this case apart from other voluntary manslaughter cases, where the victim played a coequal role in escalating the fight.

Defendant's criminal history also supports imposing a significant sentence. The instant offense was not an isolated incident. This fight was the culmination of years of alcohol abuse and unaddressed issues with anger management. Between 2011 and 2017, Defendant was convicted of intoxication 15 times. (PSR ¶¶ 50-58, 60-65.) Many of these convictions grew out of drunken arguments with friends or family members. (PSR ¶ 53, 55, 59, 60, 61, 63, 64, 65.) For example, in 2016, Defendant was convicted of intoxication and simple assault after punching his brother during a fight. (PSR ¶ 60.) In 2017, Defendant was convicted of intoxication and disorderly conduct after drunkenly pounding on the door of a residence, demanding to be admitted. When officers intervened, Defendant was uncooperative and verbally aggressive. (PSR ¶ 65.) Recognizing the danger Defendant presented, at least one family member attempted

to help Defendant prior to the instant offense.  Unfortunately, it was not enough to stop Defendant from drinking or fighting.  A 74-month sentence on Count 1 appropriately reflects the seriousness of the offense as well as Defendant's lengthy tribal criminal history.

### 2. Assault Resulting in Serious Bodily Injury

Defendant also has admitted to stabbing and strangling John Doe 2, causing a substantial risk of death.  (Doc. 25 at 4-5.)  The United States Sentencing Guidelines recommend a range of 37 months to 46 months of imprisonment for a defendant with a criminal history category of I who pleads guilty to this offense.  *See* U.S.S.G. § 2A2.2; *see also* PSR ¶¶ 32-38.   The nature and circumstances of the assault, as well as Defendant's criminal history, warrant a sentence at the top of this range.

Defendant suddenly attacked John Doe 2 during a verbal argument about everyday matters.  (PSR ¶ 12.)  The attack was both unjustified and unprovoked.  Defendant has admitted that he was not threatened by John Doe 2.   Rather, the attack was a result of Defendant's anger and his desire to "scare" John Doe 2.   (PSR ¶ 13.)

The difference between Defendant and John Doe 2's age is another aggravating factor which supports a sentence of 46 months.  At the time of the assault, Defendant was 33 and John Doe 2 was 70.  Due to his age and corresponding health conditions, John Doe 2 was significantly weaker than Defendant and was not in a position to easily defend himself.  This is evidenced by the video footage of John Doe 2 after the assault.  (Government's Exhibit 1.)  After the attack, John Doe 2 was stranded, bent backwards over the couch.  Lacking the strength to stand, he remained bowed over the couch until medical personnel arrived and lifted him up.  (*Id.*)

Fortunately, John Doe 2 physically recovered from the attack.  However, the risk of harm was severe.  Strangulation alone can cause brain damage, stroke, seizures, and other serious

medical conditions.[1]  Here, in addition to being strangled, John Doe 2 suffered a 4 centimeter stab wound to his neck.  Given these facts, a 46-month on Count 2 sentence is justified.

### 3. Consecutive Sentences

The government is requesting that the Court vary upwards and impose consecutive sentences for Defendant's crimes.  Defendant committed two violent offenses involving two different victims.  The § 3553(a) factors support imposition of a total sentence of 120 months of imprisonment (74 months on Count 1 plus 46 months on Count 2).

When, as is the case here, a defendant is convicted of multiple crimes, the court enjoys broad discretion in deciding whether to run the sentences concurrently or consecutively.  *See* 18 U.S.C. §§ 3584(b) ("[I]n determining whether the terms imposed are to be ordered to run concurrently or consecutively, [the court] shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)."); *see also United States v. Lymon,* 905 F.3d 1149, 1152 (10th Cir. 2018) (district courts enjoy discretion to deviate from a guideline recommendations and impose consecutive sentences).   In such cases, the United States Sentencing Guidelines recommend that the sentencing judge use the most serious offense as a starting point and impose incremental punishment for the additional criminal conduct.  *See generally* U.S.S.G. §§ 3D1.1-3D1.5.[2]  These Guidelines, however, are not specific to violent crime.  They were formulated "primarily with the more commonly prosecuted federal offenses in

---

[1] *See*, *e.g.*, Dr. Smock's Top 25 Serious Medical Consequences Resulting from Strangulation and the Lateral Vascular Neck Restraint, available at https://www.familyjusticecenter.org/wp-content/uploads/2018/01/Smock-Dr.-Smock's-Top-25-Serious-Medical-Consequences-Resulting-from-Strangulation-and-the-Lateral-Vascular-Neck-Restraint-2018.pdf (last accessed on February 25, 2019); Emergency Nurses Association, An Overview of Strangulation Injuries and Nursing Implications at 2-3, available at https://www.ena.org/docs/default-source/resource-library/practice-resources/topic-briefs/overview-of-strangulation-injuries-and-nursing-implications.pdf?sfvrsn=1bc6735a_8 (last accessed on February 25, 2019).

[2] The Guidelines propose that the total punishment be imposed on each count with all counts running concurrently.  U.S.S.G. § 5G1.2(b)-(c).

mind," U.S.S.G. Chapter 3, Part D, Introductory Commentary, ¶ 1, namely drugs, immigration, firearms offenses, and fraud.[3]  They are understandably ill-suited to addressing violent crimes involving multiple victims, which only account for a small percentage of the federal docket. According to the most recent statistics, murder and manslaughter cases account for only 0.2% of all federal prosecutions, while assault cases account for only 1.2%.[4]

Applying the default grouping rules in this case results in an unreasonable outcome: Defendant would receive a baseline sentence of 63 months to 78 for the killing of John Doe 1 plus a 7-9 month sentencing enhancement for the stabbing of John Doe 2.  This miserly increase does not reflect the seriousness of Defendant's assault on John Doe 2.  Nor does it provide adequate punishment or deterrence for the separate crime of stabbing John Doe 2.

Defendant committed two distinct criminal acts – stabbing John Doe 1 and stabbing and strangling John Doe 2.  He injured two victims.  Harm to multiple victims is a well-recognized and sufficient reason for imposing an upward variance.  *See, e.g., United States v. Lente*, 759 F.3d 1149, 1163 (10th Cir. 2014) (concluding that the district court permissibly varied upward to account for the multiple deaths caused by defendant's conduct); *see also United States v. Brinley*, 684 F.3d 629, 633 (6th Cir. 2012) (upholding a 38% upward variance that was based in part on the number of victims affected by defendant's fraudulent schemes); *United States v. Fight*, 625 F.3d 523 (8th Cir. 2010) (upholding 231-month sentence, a 141% increase, where defendant's

---

[3] *See, e.g.*, United States Sentencing Commission Overview of Federal Criminal Cases Fiscal Year 2017, Page 2 (listing the most commonly prosecuted federal crimes as drugs (30.8%), immigration (30.5%), firearms (12.1%), and fraud (9%)) (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2018/FY17_Overview_Federal_Criminal_Cases.pdf).

[4] United States Sentencing Commission Statistical Information Packet, Fiscal Year 2017, Table 1 (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2017/10c17.pdf).

conduct caused the death of three people); *United States v. Shipp*, 529 F. App'x 862 (9th Cir. 2013) (unpublished) (harm to multiple victims supported upward variance).

In *Lente*, the defendant was convicted of involuntary manslaughter after killing three people in a drunk-driving crash. *Lente*, 759 F.3d at 1152-53. The district court imposed a sentence of 192 months, which was more than three times longer than the 46-57 months guideline range. *Id.* at 1152. In upholding the sentence, the Tenth Circuit recognized that grouping rules cover a "vast array" of conduct and may not always achieve the objectives of § 3553(a). *Id.* at 1162. The Tenth Circuit further explained that the harm caused by a defendant's conduct is one of the factors the sentencing judge must consider under § 3553(a) when fashioning a sentence. *Id.*

The arguments in favor of an upward variance are even more compelling in this case than in *Lente*. In *Lente*, the death of multiple victims was partly a result of happenstance; the defendant made one criminal decision – to drive while intoxicated – which tragically killed multiple people. The defendant in *Lente* did not intend to injure anyone. *Id.* at 1164. By contrast, Defendant attacked two victims. He first decided to strangle and stab John Doe 1, then he chose to stab John Doe 2. While the two fights were interrelated, they are temporally and logically distinct.

The 38% increase the government is requesting is reasonable. This is not an extreme divergence requiring an extraordinary justification. *United States v. Mateo*, 471 F.3d 1162, 1170 (10th Cir. 2006) (noting that a 37% increase is only a 'significant increase' requiring 'sufficient explanation and justification.'). The significant harm Defendant caused to the victims and the egregious nature of his unprovoked attack on John Doe 2, an elderly man, support the imposition

of consecutive sentences. A 120-month sentence is necessary to fully account for the nature of the offense and the culpability of Defendant.

## CONCLUSION

A 120-month sentence is "sufficient, but not greater than necessary to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a).   WHEREFORE, the United States respectfully requests that this Court accept the plea agreement and sentence the Defendant to a term of imprisonment of 120 months followed by a term of supervised release of whatever length the Court deems appropriate.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*Electronically filed on February 26, 2019*
ALLISON C. JAROS
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico  87103
(505) 346-7274
(505) 346-7296 fax

I HEREBY CERTIFY that on the 26th
day of February, 2019, I filed the foregoing
pleading electronically through the CM/ECF
system, which caused counsel of record
to be served by electronic means on this date.

*/s/*_____
Allison C. Jaros
Assistant U.S. Attorney