IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,                                                          No. CR 18-3143 JCH

vs.

VERNON POLEAHLA,

    Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM

In the beginning of April of 2018, Vernon Poleahla 's life was good. He was employed full time as a health educator, he had been in a committed relationship for over two years and, most important, he had been successful in battling his most confounding demon, alcoholism, by maintaining his sobriety for many months.

Sadly, by the end of April 2018 everything changed and Vernon Poleahla's life fell apart. First, his partner's sixteen year-old son passed away from cancer. Then, because this loss was so devastating and overwhelming, his partner decided that she needed to separate from Mr. Poleahla. Finally, confronted by the loss of his intimate partner, Mr. Poleahla relapsed and once again began drinking heavily. The ensuing consequences were immediate and tragic.

At about 9:00 p.m. on April 27, 2018 an intoxicated Vernon Poleahla confronted his uncle's friend in his uncle's home. The friend and Mr. Polehala began arguing and a scuffle broke out. During the struggle, Mr. Polehala's uncle intervened to help his friend. Mr. Poleahla responded by pulling out a knife and stabbing both men. Although the friend suffered injuries to his neck, he ultimately survived. Mr. Poleahla's uncle, on the other hand, was not so fortunate and he died within days of the assault.

Mr. Polehala ultimately accepted responsibility for his wrongful conduct and pled guilty to an Information charging him with voluntary manslaughter (in violation of 18 U.S.C. § 1153 and 1112) and assault resulting in serious bodily injury (in violation of 18 U.S.C. §§ 1153 and 116.) Mr. Polehala now respectfully requests that this Honorable Court impose a sentence of no more than 70 months – the low-end recommended Guideline sentence for manslaughter and assault with serious injury – based on his minimal criminal history, his diligent pursuit of an advanced education, his employment history and his earnest, if at times unsuccessful, efforts to maintain his sobriety.

### ABSENCE OF OBJECTIONS TO THE PRE-SENTENCE REPORT

Mr. Poleahla has no objections to any part of the Pre-Sentence Investigation Report and there is no need for this Honorable Court to convene an evidentiary

hearing to resolve any disputed facts.

## STATEMENT OF FACTS

Vernon Poleahla and his twin brother, Verdon, were born on September 3, 1984.  His father is Erwin Poleahla (an enrolled member of the Hopi tribe) and his mother is Margaret Leekity (an enrolled member of the Zuni Pueblo).

Vernon experienced a great deal of trauma as a child.  When his parents were married, Vernon's mother endured multiple act of domestic violence and Vernon's father struggled with alcoholism.  However, when Vernon's mother finally separated from his father, Vernon's father responded by taking custody of Vernon and his brother and keeping them from their mother for many years.  When his mother finally found Vernon and his brother, she regained custody of them.

As he grew, life was difficult for Vernon's family because his mother had to work to support the family without any real help from Vernon's father.  Although Vernon's mother was able to provide for her family's basic needs, there was never enough money to make the family economically secure.  In addition, Vernon was often bullied as a child because he was not a full-blooded member of the Zuni Pueblo and spoke with a Hopi accent.

Despite the hardships he faced, when he was a young man Vernon actively

participated in the life of the Zuni Pueblo. Although he was shy as a child, Vernon regularly participated in religious ceremonies, played baseball and ran cross country. In 2003 he graduated from Zuni High School .

After he graduated from high school, Vernon was aimless. He could not find work, he did not know if he wanted to pursue additional education and he would often drink heavily to pass the time. A year later he obtained employment as a wild land firefighter with the Bureau of Indian Affairs, but that job was only seasonal and it was difficult to find other employment which complimented his work as a firefighter. By 2012 and 2013, Vernon's drinking increased to the point where it was truly making his life unmanageable: in that period he was convicted of public intoxication in the Zuni Tribal Court on five different occasions.

In August of 2014 Vernon enrolled at the Gallup Branch of the University of New Mexico and studied health education. In December of 2015 he obtained a certificate as a Diabetes Prevention Specialist.

After he completed his course work at UNM-Gallup, Vernon continued to work as a wild land firefighter and continued to drink heavily when he was not working. Once again his alcohol use created problems in his life: in the period from July of 2015 through January of 2017 Vernon sustained five more convictions for public intoxication in the Zuni Pueblo.

In July of 2017 Vernon obtained employment as an Assistant Health Educator with the Cope Community Outreach Patient Empowerment Program in Gallup. He worked for the organization until the date of his arrest. Vernon developed a reputation at Cope as a friendly, hard working team member who was always on time and who was rarely absent.

After he obtained employment with Cope, Vernon's life improved. He sustained a relationship with his girlfriend, Jocelyn Lucero, he worked hard at his job and he began to seek help for his alcoholism. Vernon enrolled in an outpatient treatment program at the Recovery Center in Zuni and began attending meetings of Alcoholics Anonymous. For the first time in his life, Vernon was able to maintain his sobriety for many months and achieve a level of happiness he never knew.

Sadly, following the death of her son, Vernon's girlfriend decided to separate from Vernon, if only for a short period. The loss of the relationship led Vernon to relapse and his descent into an alcoholic hell was pronounced and precipitous.

After just a few days of drinking, Vernon quickly found himself drinking to the point of black outs. On the evening of April 27, 2018 he began drinking as soon as he was done with work and within four hours, he had killed his uncle and

wounded his uncle's friend in a frenzy of activity that he could barely remember.

Vernon is devastated by the death of his uncle. He and his uncle enjoyed a very close relationship when he was growing up and he knows that he is responsible for his uncle's early and unnatural passing. Vernon is truly remorseful for what he has done and he wishes that his acts on April 27, 2019 had never happened.

Vernon Poleahla was making great strides to improve his life but those efforts were derailed in one night by an excess of alcohol. Although Vernon realizes that he cannot change the past, he is resolute about changing his future. With the help of his family, who consistently describe him as a loving and caring person, Vernon is hopeful that, after he pays the price for this crime, he will be able to return to the Zuni Pueblo, pursue further education, reunite with Jocelyn and remain sober. The Pre-Sentence Report said it best: "[Vernon] does not want to fall back into the lifestyle that led up to the instant offense." (PSR, p. 18, ¶ 87.)

## **ARGUMENT**

Congress has demanded that there should be "no limitation . . . on the information concerning the background, character and conduct of a person convicted of an offense which a court . . . may receive and consider for the purposes of imposing an appropriate sentence." 18 U.S.C. § 3661. Consequently,

Mr. Poleahla respectfully submits that, in imposing the sentence in this case, this Honorable Court should be mindful of the fact that he his never been convicted of any criminal offense (except for the intoxication offenses adjudicated in the Zuni Tribal Court) and that, just before the offense, he worked hard to better his life by pursuing additional education, maintaining his employment and seeking treatment for his alcoholism.

More important Mr. Pohleala contends that this Honorable Court must realize that the charged crime occurred solely because of the devastating effects of alcohol.  Mr. Poleahla respectfully submits that, but for his relapse, this crime would not have occurred.

Child maltreatment, which includes both child abuse and child neglect, "roughly doubles the probability that an individual engages in many types of crime."  Currie, J. And Tekin, E., "Does Child Abuse Cause Crime?" National Bureau of Economic Research, Working Paper 12171.  Children who experience childhood trauma are more likely to engage in criminal behavior at an early age and are less likely to engage in legitimate, pro-social activities.  More important, the probability of engaging in crime increases with both the experience of multiple forms of maltreatment and the severity of the abuse or neglect.  *Ibid*.

In addition, a growing body of research demonstrates that children who are

exposed to acts of domestic violence in childhood are more likely to experience a wide range of adverse psycho-social and behavioral outcomes, including low self-esteem, social withdrawal, depression, anxiety and delinquency.  More troubling, children who are exposed to both childhood trauma and domestic violence show an even more elevated risk for these adverse outcomes.  Moylan, C. et al. "The Effects of Child Abuse and Exposure to Domestic Violence on Adolescent Behavior Problems," *Journal of Family Violence,* 201, pp. 53-63.

Finally, it is well known that children born into families with a history of addiction or abuse are at increased risk for substance use disorders later in life. "Children of alcoholics are about four times more likely than the general population to develop alcohol problems and are at higher risk for many other behavior and emotional problems.  "A Family History of Alcoholism," National Institute on Alcohol Abuse and Alcoholism, June 2012.

Native Americans in particular have some of the highest rates of alcohol and drug abuse among any identifiable group.  Substance Abuse and Mental Health Services Administration (2016) www.samhsa.gov/specific-populations/racial-ethnic-mionority.  Native Americans and Alaskan Natives are five times more likely than other ethnic groups in the United States to die of alcohol-related causes.  National Institute on Alcohol Abuse and Alcoholism. www.niaa.nih.gov

/publications/ arh301/3-4.htm.

Mr. Poleahla shares the same sad social history of so many Native Americans who experience a high rate of childhood trauma and then subsequently battle the disease of addiction. Like so many Natives, he experienced a variety of traumatic events as a child. Born to an alcoholic father who committed acts of domestic violence against his mother, Mr. Poleahla was then taken by his father and kept from his mother for many years. When he finally returned to his mother's custody, he continued to confront problems such as economic insecurity and persistent bullying. The cumulative effect of these traumas increased his risk of developing a substance use disorder.

Alcohol abuse is a physical malady just like other chronic, incurable diseases like asthma, heart disease and diabetes. Like these other diseases, treatment enables people to counteract alcoholism's powerful, disruptive effect on their brain and their behavior and regain control of their lives. And, like these other illnesses, relapse is common. The National Institute of Drug Abuse reports that relapse rates (i.e. how often symptoms recur) for people with substance abuse disorders is similar to relapse rates for these other chronic medical illnesses. The NIDA found that 40 to 60% of patients with drug addiction suffer a relapse, compared with 50 to 70% of patients with hypertension and asthma and 30 to 50%

of patients with Type 1 Diabetes.  The Institute concluded that "treatment of chronic disease involves changing deeply imbedded behaviors and relapse does not mean treatment has failed.  For a person recovering from addiction, lapsing back to drug use indicates that treatment needs to be reinstated or adjusted or that another treatment should be tried."  National Institute on Drug Abuse "Drugs, Brains and Behavior: The Science of Addiction."

    Mr. Poleahla should not be viewed as an immoral, weak-willed deviant who committed a notorious crime without provocation.  Instead, suffering from a serious, relapsing disease of the mind, he committed the charged crime under a sudden provocation which was filtered through a mind impaired by alcohol.  That is why Mr. Poleahla believes that he should appropriately receive the sentence recommended by the United States Sentencing Guidelines for the crimes of voluntary manslaughter and assault resulting in serious bodily injury.

    WHEREFORE, for all of the foregoing reasons, Defendant Vernon Poleahla respectfully requests that this Honorable Court impose a sentence of no more than 70 months in the custody of the United States Bureau of Prisons followed by a term of supervised release which includes alcohol treatment.

        Respectfully Submitted,

        /s/ *Brian A. Pori* filed electronically 4/4/19
            Brian A. Pori
            Assistant Federal Public Defender
            111 Lomas Blvd NW, Suite 501
            Albuquerque, N.M. 87102-2373
            (505) 346-2489 [telephone]

        Counsel for Vernon Poleahla

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of April, 2019, I filed the foregoing Defendant's Sentencing Memorandum electronically through the CM/ECF system, which caused a copy of the pleading to be served electronically on opposing counsel of record addressed as follows:

Allison Jaros, Esq.
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103

            /s/ filed electronically 4/4/19
            Brian A. Pori